Ira WATKINS, Jr., Appellant,

v.

STATE of Indiana, Appellee.

No. 381S76.

Supreme Court of Indiana.

June 18, 1982.

John H. McKenna, Gary, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

The defendant-appellant, Ira Watkins, Jr., was convicted after a jury trial of dealing in a narcotic drug, a class B felony, Ind.Code Ann. § 35–48–4–1 (Burns 1979). He was sentenced to a prison term of fifteen years. This appeal follows the denial of defendant's motion to correct errors and raises the following issues:

(1) Whether the evidence adduced at trial was insufficient to support a conviction, and whether the State failed to refute the defense of entrapment.

(2) Whether the State failed to establish a proper chain of custody as to certain evidence.

(3) Whether the trial court erred in granting the State's oral motion to strike defendant's motion to suppress.

The facts favorable to the State's case reveal that on January 30, 1980, Lake County police officers, working undercover with an informant, were investigating illegal drug selling in East Chicago. With the

informant acting as a middleman, a police officer purchased heroin from the defendant.

## I.

The defendant claims that the evidence as a whole clearly supported his defense of entrapment and that the State failed to overcome its burden of proving beyond a reasonable doubt that he was not entrapped.

The defense of entrapment is set forth in Ind.Code Ann. § 35–41–3–9 (Burns 1979):

"(a) It is a defense that:

(1) the prohibited conduct of the person was the product of a law enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and

(2) the person was not predisposed to commit the offense.

(b) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment."

When the defense of entrapment has been raised, the State has the burden of proving beyond a reasonable doubt that the defendant's conduct was not a product of the efforts of a law enforcement officer, or of proving beyond a reasonable doubt that the defendant was predisposed to engage in the conduct. *Ryan v. State*, (1982) Ind., 431 N.E.2d 115; *Williams v. State*, (1980) Ind., 412 N.E.2d 1211; *Hardin v. State*, (1976) 265 Ind. 635, 358 N.E.2d 134.

Officer Bauner testified that he and another police officer searched the informant, Paz, for drugs, weapons and money, none of which they found on him. They then drove, with Paz, to a tavern in East Chicago where Paz left the car and entered the tavern "to see if anyone we had purchased heroin from was in there, or anybody else he knew that dealt in heroin was in there." Paz was to introduce Officer Bauner to heroin dealers for the purpose of purchasing the drug. Bauner testified that Paz had been inside the tavern two or three minutes when he returned to the undercover car with Ira Watkins, Jr., whom he identified as the defendant in the courtroom. Officer Bauner testified that he then had a conversation with the defendant in which he made an agreement to purchase heroin from the defendant for $75. He testified that the defendant agreed to give the heroin to Paz, who could then hand it to Bauner, and that the defendant said that the heroin was just across the street and Paz could return with it within a minute or so. Bauner testified that he then gave the $75 to Paz who immediately handed it to the defendant, that Paz and the defendant walked across the street, that a minute later Paz returned and handed Bauner four packets of a powdery substance, and that Paz was searched again for drugs, weapons, and money, none of which was found.

Officer Brooks testified that he sat in a parked car in a lot near the tavern and observed the transaction through a night telescope with infrared lighting. He testified that he saw Paz enter the tavern and leave in three to five minutes with a man he identified as the defendant, that he observed Bauner, Paz, and the defendant talking, that he observed Bauner hand something to Paz, who then gave the thing to the defendant, that he observed Paz and the defendant walk across the street where the defendant handed something to Paz, and that he observed Paz walk back across the street to Bauner. Brooks also testified that Paz did not engage anyone else in conversation besides the defendant after Paz and the defendant left Bauner's presence.

Officer Arreguin testified that he participated in the investigation and conducted the initial search of Paz, that he sat in a parked car near the bar and kept a watch on the car in which Officer Bauner was sitting, and that he saw Paz leave the car, go into the tavern, come out with the defendant a few minutes later and go with him back to the Bauner vehicle. Arreguin testified that he saw Bauner hand something to Paz, that he saw Paz and the defendant cross the street, passing out of his view, that ten or fifteen seconds later he

saw Paz again, crossing the street back to the car in which Bauner was seated, and that Paz and Bauner drove off and met him and other police officers at a pre-determined location where Officer Bauner handed Arreguin four sealed plastic envelopes, whose contents he determined to be heroin.

The informant, Paz, did not testify.

The defendant claims that the record does not establish that he was ever observed in possession of, or delivering, drugs, and does not demonstrate any intent or predisposition on his part to sell drugs, while it does demonstrate that the transaction was entirely initiated and induced by law enforcement officers. He likens the facts here to those in *Medvid v. State*, (1977) Ind.App., 359 N.E.2d 274, a case in which the Court of Appeals reversed a conviction because the only evidence produced which demonstrated a possible predisposition to sell a controlled substance was inadmissible hearsay as to the defendant's prior crimes.

We do not share the defendant's interpretation of the record. The testimony of the police officers was sufficient to support the inference that the defendant was predisposed to deliver heroin to an intermediary, after receiving money, for delivery to Bauner. The facts here are distinguishable from those in *Medvid, supra,* because inadmissible hearsay evidence of prior crimes is not at issue in this case.

Evidence from this testimony supporting predisposition includes the testimony that Paz was searched before entering the tavern, the short time that Paz was in the tavern before emerging with the defendant, the defendant's immediate acceptance of the money from Bauner via Paz, his caution in using Paz as a go-between, and his easy and quick access to a supply of heroin. In addition, the defendant himself gave evidence of his willingness to deal in illegal drugs when he testified that he had purchased heroin from another person about two weeks before the incident at issue. The jury, moreover, had been informed that the defendant had been convicted of selling heroin in 1971.

The defendant had denied selling the heroin to Bauner and had a different version of what took place in the conversation with Bauner. It was, however, the jury's task to weigh conflicting evidence and determine the credibility of the witnesses.

There was substantive evidence of probative value from which the jury could conclude that the defendant was predisposed to commit the crime charged.

## II.

State's Exhibit No. 1, an evidence bag, and Exhibit No. 2, a letter describing the contents of the bag, were admitted into evidence over the defendant's objection that the State failed to show a chain of custody. The defendant argues that the trial court erred in overruling his objection.

The purpose of requiring the State to establish a chain of custody concerning seized evidence is to show a complete chain of possession from the original receiver to the final custodian, and thus to lay a proper foundation connecting the evidence in question with the accused, *Williams v. State*, (1979) Ind., 387 N.E.2d 1317.

The chain of custody showing is not required, however, for periods before the evidence comes into the possession of law enforcement personnel. *Downing v. State*, (1978) Ind.App., 381 N.E.2d 554; *Williams v. State*, (1978) Ind., 379 N.E.2d 981; *Thornton v. State*, (1978) 268 Ind. 456, 376 N.E.2d 492.

The defendant's claim focuses on what he asserts is the State's failure to link the defendant with the heroin. Thus, the question is not whether the State negated the likelihood of tampering, loss, mistake, or substitution of the evidence once it came into the possession of the police, but rather whether there was sufficient evidence linking the defendant with the heroin. In this regard, the defendant argues that there was no evidence showing that he possessed, or delivered to Paz, any heroin, and that during the period in which Paz was in the tavern (and therefore out of the view of the

officers on surveillance), Paz might have obtained the heroin from anyone in the tavern, rather than from the defendant later on the street. The defendant claims that no testimony was offered by the State to establish where and when Paz received the heroin from him.

 The record shows, however, that one of the police officers, Brooks, testified to having observed the defendant hand something to Paz on the street after the two had had the conversation with Bauner at his car. Thus, there was circumstantial evidence that the defendant delivered heroin to the informant. "Where the evidence of guilt is essentially circumstantial the question for the reviewing court is whether reasonable minds could reach the inferences drawn by the jury; if so, there is sufficient evidence." *Bruce v. State*, (1978) Ind., 375 N.E.2d 1042, 1080. The evidence summarized in I, above, is sufficient to support the inference that defendant delivered heroin to the informant. Thus, there was no error in the admission of State's Exhibits Nos. 1 and 2.

### III.

The defendant filed a pre-trial motion to suppress the heroin evidence, alleging that it was illegally obtained through entrapment and therefore inadmissible as a matter of law. Recognizing that the defense of entrapment is a factual matter to be resolved by the jury, the defendant argues that the rule of probable cause is closely related to the defense of entrapment, and that "accordingly the probable cause rule arising in an entrapment case is a question of law for the court."

The State is therefore, defendant argues, precluded from utilizing evidence obtained absent probable cause for "baiting a trap," citing *Locklayer v. State*, (1974) 162 Ind. App. 64, 317 N.E.2d 868. The defendant claims that the denial of the motion was a denial of his right to challenge the evidence contained in State's Exhibits Nos. 1 and 2 and testimony relating to the exhibits.

"Probable cause to suspect" is no longer an issue in entrapment cases. *Lewandow-*

*ski v. State*, (1979) Ind., 389 N.E.2d 706. Thus, the defendant's argument fails, and the motion to suppress was properly denied.

The conviction is affirmed.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.