Richard McGOWAN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 28A05–9507–CR–289.

Court of Appeals of Indiana.

Sept. 30, 1996.

Transfer Granted Dec. 19, 1996.

874

Eugene C. Hollander, Indianapolis, for appellant.

Pamela Carter, Attorney General of Indiana, Randi F. Elfenbaum, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

SHARPNACK, Chief Judge.

Richard McGowan appeals his conviction for dealing in cocaine, a class A felony. He raises six issues for our review which we consolidate and restate as:

(1) whether the evidence was sufficient to rebut McGowan's entrapment defense;

(2) whether the trial court erroneously instructed the jury as to the entrapment defense;

(3) whether the trial court properly ruled that the Indiana State Police Undercover Officer's policy manual was not discoverable;

(4) whether McGowan received the ineffective assistance of counsel; and

(5) whether McGowan's sentence was reasonable.

We affirm.

The facts most favorable to the judgment follow. In 1993, Detective Paul Andry of the

Indiana State Police was conducting an undercover drug operation when he met Mike Nelson. Andry purchased cocaine from Nelson approximately three times over the next year. On one occasion, Nelson gave Andry a telephone number of a friend with whom he was staying.

On March 7, 1994, Andry called Nelson at Nelson's friend's place. McGowan answered the phone and told Andry that Nelson had been sent to jail on a burglary charge. Andry stated that Nelson was "not gonna be able to do [him] any good." Record, p. 745. McGowan responded that he might be able to "do [him] some good." Record, p. 746. McGowan further stated that he could not talk on the telephone, but that he would meet Andry in person.

Later that evening, Andry met with McGowan at the prearranged place. After discussing Nelson's situation, McGowan stated, "I can't do you any good tonight, but I'm getting ready to head to New York either tonight or tomorrow morning, and that's why I wanted to talk to you." Record, p. 757. Andry gave McGowan $300.00 as a down payment for the purchase of an ounce of cocaine. McGowan told Andry about his supplier and about the quality of the drugs.

A few days later, Andry began calling McGowan and leaving messages on his answering machine. On March 11, 1994, Andry contacted McGowan, and they arranged to meet. Andry wore a transmitter to the meeting. When Andry arrived, McGowan gave him a plastic bag containing 27.054 grams of cocaine. The men discussed future purchases, and McGowan stated that he normally sold "eight balls" for $300.00.[1] McGowan also indicated that he was planning to make another trip to New York in two to three weeks.

On April 29, 1994, Andry contacted McGowan to arrange another meeting. During the meeting, which Andry recorded, the men discussed the possibility of McGowan making another trip to New York to purchase cocaine. McGowan asked Andry to "front" him the money to purchase an ounce of cocaine and offered to make a special trip to New York to get Andry three ounces of cocaine. Record, p. 884. McGowan also indicated he had another source in Chicago where he could get less expensive drugs. The men agreed that Andry would pay $1250 for each ounce. However, because Andry believed that McGowan would not return with the cocaine, he did not give McGowan any money. As a result of the investigation, McGowan was charged with dealing in cocaine in violation of Ind.Code § 35–48–4–2.

On March 24, 1995, McGowan filed a motion requesting that the State produce any written policies or procedures of the Indiana State Police relevant to the performance of undercover investigations. On March 28, 1995, the State filed an objection to McGowan's motion arguing that the document was confidential and, therefore, that it was not discoverable. The trial court ordered that the State did not have to produce the manual to McGowan, but that it had to provide the manual for an *in camera* inspection. Later, after conducting the inspection, the trial court affirmed its initial order denying McGowan access to the manual.

On April 4, 1995, McGowan filed a motion in limine requesting that the State's witnesses not refer to any of his prior convictions, arrests, alleged misconduct, bad acts, or pending criminal prosecutions. This motion was granted.

On April 5, 1995, the jury found McGowan guilty of dealing in cocaine. After conducting an evidentiary hearing, the trial court sentenced McGowan to thirty years. McGowan now appeals his conviction and sentence.

### I.

▮ The first issue raised for our review is whether the evidence was sufficient to rebut McGowan's asserted entrapment defense. This defense is governed by I.C. § 35–41–3–9, which provides as follows:

"(a) It is a defense that:

(1) The prohibited conduct of the person was the product of a law enforcement officer, or his agent, using persuasion or

---

1. An "eight ball" is equal to 3.5 grams of cocaine.

other means likely to cause the person to engage in the conduct; and

(2) The person was not predisposed to commit the offense.

(b) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment."

I.C. § 35–41–3–9. If the evidence shows police involvement in the transaction, the entrapment defense is raised; formal pleading of the defense is not required. *Fearrin v. State*, 551 N.E.2d 472, 473 (Ind.Ct.App.1990), *trans. denied.* However, the defendant must affirmatively raise the defense before the State is required to offer evidence to rebut the alleged entrapment. *Id.* Once the defendant has indicated his intent to rely on the defense and established police inducement, the burden shifts to the State to show beyond a reasonable doubt the defendant's predisposition to commit the crime. *Dockery v. State*, 644 N.E.2d 573, 577 (Ind.1994). If the defendant shows police inducement and the State fails to show predisposition to commit the crime charged, entrapment is established as a matter of law. *Id.*

■ Whether the defendant is predisposed to commit the crime is a question for the trier of fact. *Id.* Factors that suggest a predisposition to sell drugs include knowledge of drug prices, knowledge of drug sources and suppliers, use and understanding of terminology of the drug market, solicitation of future drug sales, and multiple sales to undercover officers.[2] *Id.* at 579, n. 7; *Martin v. State*, 537 N.E.2d 491, 495 (Ind. 1989). Predisposition may also be established by evidence that the defendant possessed large amounts of contraband and that the defendant could readily access sources to buy contraband in a short period of time.

*Smith v. State*, 565 N.E.2d 1059, 1063 (Ind. 1991).

■ We review a claim of entrapment using the same standard that applies to challenges to the sufficiency of the evidence. *Dockery*, 644 N.E.2d at 578. We consider the evidence most favorable to the judgment and the reasonable inferences drawn therefrom. *Id.* We neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* We will uphold the judgment where there is substantial evidence of probative value from which a reasonable trier of fact could infer that the defendant was guilty beyond a reasonable doubt. *Id.*

■ McGowan argues that he demonstrated police inducement as part of his entrapment defense. However, McGowan claims the State failed to rebut the defense by proving his predisposition to sell cocaine. He concludes that the entrapment defense was established as a matter of law and, therefore, that his conviction should be vacated.

Viewing the evidence most favorable to the judgment, we find sufficient evidence to support the conclusion that McGowan was predisposed to sell cocaine. When Andry made the initial telephone call to his previous contact Nelson, McGowan answered the phone and suggested that he might be able to "do [Andry] some good," since Nelson was in prison. Record, p. 746. They later met at a prearranged location and McGowan stated that he was leaving for New York the following day to buy some cocaine. McGowan quoted prices for the purchase of cocaine in terms of "eight balls" and ounces. He used drug market slang such as "copping off,"

2. McGowan cites the five factor test enumerated in *Kats v. State* to determine whether predisposition exists: "(1) the character or representation of the defendant; (2) whether the suggestion of criminal activity was originally made by the government; (3) whether the defendant was engaged in criminal activity for a profit; (4) whether the defendant evidenced reluctance to commit the offense, overcome by government persuasion; and (5) the nature of the inducement or persuasion offered by the government." *Kats v. State*, 559 N.E.2d 348, 353 (Ind.Ct.App.1990), *trans.*

denied (quoting *United States v. Fusko*, 869 F.2d 1048, 1052 (7th Cir.1989)). Applying these factors, McGowan concludes that predisposition was not shown.

However, *Kats* does not require the application of these five factors, but, instead, notes "the importance of the [five] factors in determining whether predisposition ... exists." *Id.* We find that these five factors are more indicative of whether the defendant's activity was induced by the government, rather than whether the defendant was predisposed to commit the crime.

"stepped on," and "cut".[3]

A few days later, McGowan obtained an ounce of cocaine and sold it to Andry. McGowan agreed to obtain three ounces of cocaine for Andry if Andry would "front" him $1250. Record, p. 884. Finally, McGowan indicated that he knew a Chicago supplier to use if his New York connection did not materialize.

This evidence suggests that McGowan was predisposed to commit the offense. McGowan used drug terminology and was familiar with drug prices. He obtained a large amount of cocaine in a relatively short period of time and engaged in the solicitation of future drug sales. *See Smith*, 565 N.E.2d at 1063. In addition, he demonstrated his familiarity with two drug suppliers. This evidence is sufficient to rebut McGowan's entrapment defense and supports the finding that he was predisposed to sell cocaine. *See Young v. State*, 620 N.E.2d 21, 25 (Ind.Ct. App.1993), *trans. denied; Martin*, 537 N.E.2d at 495. Nevertheless, McGowan argues there is no evidence to support a finding that he would have sold the cocaine if he had not been "contacted and prompted by Andry." Appellant's brief, p. 16. He claims there is no evidence to demonstrate his predisposition other than his use of drug terminology, which McGowan maintains is widely known. However, this argument is merely a request to reweigh the evidence, which we may not do. *See Dockery*, 644 N.E.2d at 578.

Because the record demonstrates substantial evidence of probative value from which the jury could infer that McGowan was guilty of selling cocaine beyond a reasonable doubt, we will uphold the judgment. *See Dockery*, 644 N.E.2d at 578.

## II.

The second issue raised for our review is whether the trial court erroneously instructed the jury about the entrapment defense. McGowan challenges three of the trial court's final instructions and claims the court erred in denying his tendered instruction. We will address each challenge in turn.

First, McGowan challenges Final Instruction # 6, which provides:

"Some relevant factors which you may consider as evidence of predisposition to sell drugs include: knowledge of drug prices; knowledge of drug sources and suppliers; use and understanding of slang; willingness to engage in future transactions; eagerness in the transaction in question; possession of large quantities of the narcotic; or ability to obtain access to narcotics in a short time."

Record, p. 258. McGowan concedes that the information contained in the instruction is an accurate statement of the law, but claims that the statement may not be used as a jury instruction. He argues that the statement is "proper dicta, but not appropriate for instruction" because it "commands" the jury to consider only the factors listed in the instruction.

Initially, we note that McGowan did not object to the instruction at trial. Generally, the failure to object to an instruction at trial waives the issue for appellate review. *England v. State*, 530 N.E.2d 100, 102 (Ind.1988). However, the issue may be addressed if the error asserted is fundamental. *James v. State*, 613 N.E.2d 15, 25 (Ind.1993). Fundamental error is error that is a "substantial blatant violation of basic principles rendering the trial unfair to the defendant." *Townsend v. State*, 632 N.E.2d 727, 730 (Ind.1994). McGowan argues that the instruction constituted fundamental error because it relieved the State of the burden of proving his predisposition.

Contrary to McGowan's assertion, the instruction does not "command" the jury to consider only the factors listed in the instruction. The instruction merely lists "some relevant factors" which the jury "may consider" as evidence of McGowan's predisposition. Record, p. 258. The instruction did not relieve the State of its burden to prove predisposition beyond a reasonable doubt. Furthermore, the instruction tracks the factors listed by our supreme court in several recent cases. *See Dockery*, 644 N.E.2d at 579, n. 7;

---

**3.** "Copping off" is a slang term for buying drugs from a person. "Stepped on" means that not too much "cut" has been added to the cocaine which would dilute the quality of the drug.

*Gilley v. State,* 535 N.E.2d 130, 132 (Ind. 1989); *Martin,* 537 N.E.2d at 495; *see also Fundukian v. State,* 523 N.E.2d 417, 418 (Ind.1988). Accordingly, McGowan's argument is without merit.

■ Next, McGowan challenges Final Instructions # 5 and # 7. Instruction # 5 provides:

"The defense of entrapment is defined by law as follows:

It is a defense that the prohibited conduct of the person was the product of a law enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct and the other person was not predisposed to commit the offense.

Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment.

The State has the burden of disproving this defense beyond a reasonable doubt.

The State must prove *either* that the accused's prohibited conduct was not the product of the efforts of the law enforcement official involved, *or* that the Defendant was predisposed or 'ready, willing and able', to engage in such conduct anyway."

Record, p. 257 (emphasis added). Instruction # 7 states:

"To find the Defendant guilty of the offense of Dealing In Cocaine, a class A felony, the State must have proved each of the following elements:

That the Defendant, Richard McGowan

1. Knowingly or intentionally

2. delivered

3. cocaine, pure or adulterated in an amount in excess of three (3) grams.

Since the defense of entrapment was raised, the State must also prove beyond a reasonable doubt that:

1. The Defendant's prohibited conduct was not the product of the efforts of the law enforcement official involved

OR

2. The Defendant was predisposed to engage in such conduct.

If the State did prove each of the above elements beyond a reasonable doubt, you should find the Defendant guilty of Dealing In Cocaine, a class A felony.

If the State failed to prove any one or more of the above elements beyond a reasonable doubt, you should find the Defendant not guilty of Dealing in Cocaine, a class A felony."

Record, p. 259. McGowan argues that these instructions are erroneous because they incorrectly advised the jury that to counter the entrapment defense, the State need prove either that his conduct was not the product of persuasion or that he was predisposed to commit the crime. McGowan claims that the State is required to prove both elements and, therefore, that the instructions are incorrect, misleading, and prejudicial.

Again, McGowan failed to object to these instructions at trial. In an effort to avoid the waiver of his challenge, McGowan argues that trial counsel was ineffective for failing to object to the instructions. To prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's failure to function was so prejudicial as to deprive appellant of a fair trial. *See Strickland v. Washington,* 466 U.S. 668, 690–692, 104 S.Ct. 2052, 2066–2067, 80 L.Ed.2d 674 (1984); *Averhart v. State,* 614 N.E.2d 924, 930 (Ind. 1993), *reh'g denied.*

■ We find that the instructions were proper and that defense counsel was not ineffective for failing to object to them at trial. Based on the statute, the entrapment defense consists of two elements: (1) that the defendant's conduct was the product of a law enforcement official's persuasion and (2) that the defendant was not predisposed to commit the crime. I.C. § 35–41–3–9. It is the defendant's obligation to raise the defense at trial by demonstrating the intent to rely on the defense and by establishing police inducement. *Dockery,* 644 N.E.2d at 577. Once the defendant raises the defense, the burden shifts to the State to rebut the defense beyond a reasonable doubt. *Id.* The State properly rebuts the defense when it

demonstrates the defendant's predisposition beyond a reasonable doubt. *Id.*

While several supreme court cases seem to stand for the proposition that the State must disprove both elements of the defense beyond a reasonable doubt to deny the defendant the benefit of the defense, *see Smith v. State,* 565 N.E.2d at 1063; *Gossmeyer v. State,* 482 N.E.2d 239, 241 (Ind.1985); *Baird v. State,* 446 N.E.2d 342, 344 (Ind.1983); *see also Fearrin,* 551 N.E.2d at 474 (holding that once the defense is raised, the burden shifts to the State to show that the defendant has not been induced by a governmental agency to commit a crime which the defendant had no predisposition to commit), the analyses nevertheless focus on whether the State rebutted the defense by demonstrating the accused's predisposition to commit the crime. *See, e.g., Gossmeyer,* 482 N.E.2d at 241 (holding that the State rebutted the entrapment defense because it demonstrated the accused's predisposition by showing the possession of a large quantities of drugs, the ability to access large quantities of drugs in a short time, the knowledge of sources, and the manner of conducting the sale).

Furthermore, if the defense is established by demonstrating the existence of two elements, then it is logical that the defense is rebutted by demonstrating the nonexistence of one of those two elements. This interpretation is consistent with other supreme court cases. *See Mack v. State,* 457 N.E.2d 200, 202–203 (Ind.1983); *Watkins v. State,* 436 N.E.2d 83, 84 (Ind.1982); *Ryan v. State,* 431 N.E.2d 115, 117 (Ind.1982).

Finally, since an individual who was predisposed to commit the crime could not use the entrapment defense, *see* I.C. § 35–41–3–9 (conduct by police officials which only affords the defendant an opportunity to commit the crime, does not constitute entrapment), the defense is rebutted by demonstrating that an individual was predisposed to commit the crime despite police inducement. *See Dockery,* 644 N.E.2d at 577 (once the defendant shows police inducement, burden shifts to the State to show defendant's predisposition).

After considering the above line of cases, we find that instructions # 5 and # 7 were proper jury instructions on the defense of entrapment. Therefore, defense counsel did not err by failing to reject to the instructions and, as a result, McGowan did not receive ineffective assistance of counsel. *See Strickland,* 466 U.S. at 690–692, 104 S.Ct. at 2066–2067.

■■ Finally, McGowan argues that the trial court erroneously refused his tendered instruction # 2 which provides:

"When the defense of entrapment is raised, you, as the trier of fact, must make the following inquiry:

1. Did a law enforcement officer, or his agent, initiate and actively participate in the criminal activity; and

2. Is there evidence that the accused was predisposed to commit the crime so that the prescribed activity was not solely the idea of the law enforcement officer. If the evidence shows police activity absent any showing of predisposition on the part of the accused, you must find the Defendant not guilty."

Record, p. 235.

■■■ In reviewing a trial court's refusal to a tendered instruction, we consider the following three factors: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions. *Griffin v. State,* 644 N.E.2d 561, 562 (Ind.1994). A party is not entitled to a repetitive instruction. *Reeves v. Boyd & Sons, Inc.,* 654 N.E.2d 864, 873 (Ind.Ct.App.1995), *trans. denied.* A party is also not entitled to the best instruction. *Underly v. Advance Mach. Co.,* 605 N.E.2d 1186, 1191 (Ind.Ct.App.1993), *reh'g denied, trans. denied.* We will affirm as long as the trial court gave an instruction which adequately and correctly stated the law. *Id.* Because McGowan presumes that instructions # 5 and # 7 were inaccurate and confusing, he argues that the substance of his tendered instruction was not "adequately" and "appropriately" covered by other instructions. Appellant's brief, pp. 27–28.

As previously stated, instructions # 5 and # 7 were correct statements of the law and

because there was evidence to support the giving of those instructions, we can affirm the refusal of McGowan's tendered instruction if we find that the substance of it was covered by instructions #5 and #7. Instruction #5 informed the jury that the entrapment defense is established where the defendant's acts were the product of a law enforcement official and the defendant was not predisposed to commit the crime. It also informed the jury that the State had the burden to rebut the defense beyond a reasonable doubt by demonstrating either that the defendant's conduct was not the result of persuasion by law enforcement officials or that the defendant was predisposed to commit the crime anyway. Instruction #7 informed the jury that it should find McGowan not guilty if the State failed to prove beyond a reasonable doubt that defendant's conduct was not the product of law enforcement officials or that the defendant was predisposed to commit the crime. The tendered instruction requests the jury to consider the police involvement in the activity and the defendant's predisposition to commit the crime, and the instruction informs the jury that if the evidence shows police activity absent predisposition, then it must find the defendant not guilty. Because the substance of McGowan's tendered instruction was already covered by other instructions, we hold that the trial court did not abuse its discretion in refusing the tendered instruction. *See Griffin*, 644 N.E.2d at 562.

### III.

■ The third issue raised is whether the trial court properly ruled that the Indiana State Police Undercover Officer's policy manual was not discoverable. On March 24, 1995, McGowan filed a motion requesting the State to produce any written policies of the Indiana State Police with respect to undercover operations. On March 28, 1995, the State filed an objection to McGowan's motion arguing that the document should not be discoverable. In support, the State submitted the affidavit of Commander Donald J. Brackman of the Investigation Division of the State Police, who indicated that if the manual was produced it "could significantly hamper and endanger undercover officers in covert investigations." Record, p. 120. The trial court initially ruled that the State did not have to produce the manual for McGowan, but that it had to produce the manual for an *in camera* inspection. After reviewing the document, the trial court affirmed its preliminary order denying McGowan's motion to produce the manual.

■ When ruling on requests for discovery by a criminal defendant, the trial court must consider whether there is a sufficient designation of the items sought to be discovered and whether the items sought to be discovered are material to the defense. *Kindred v. State*, 540 N.E.2d 1161, 1174 (Ind. 1989). If these two considerations are satisfied, then the trial court must grant the discovery motion unless the State makes a showing of paramount interest in nondisclosure. *Id.* Trial courts are vested with broad discretion in discovery matters. *Jenkins v. State*, 627 N.E.2d 789, 798 (Ind.1993), *reh'g denied, cert. denied,* — U.S. —, 115 S.Ct. 64, 130 L.Ed.2d 21. Absent a clear violation of that broad discretion and a showing of prejudice, a trial court's decision will not be disturbed. *Id.* One of the strongest presumptions on appeal is that the trial court acted properly. *Id.*

The parties do not dispute that McGowan sufficiently designated the item to be discovered. Instead, they dispute whether McGowan demonstrated that the item was material to his defense and whether the State made a showing of a paramount interest in the nondisclosure of the manual.

McGowan has failed to demonstrate how he was prejudiced by the trial court's failure to disclose the manual to him prior to trial. Rather, he merely argues that he should have had access to the manual to aid in his cross-examination of the undercover officers. However, he fails to explain how the manual would have aided cross-examination. McGowan's failure to demonstrate prejudice is significant in light of the fact that the manual is included in the record of proceedings despite the trial court's order that the manual be sealed and not disclosed to either side.

Given the trial court's broad discretion in ruling on discovery motions and McGowan's failure to demonstrate prejudice, we will not disturb the trial court's determination. *See id.*

## IV.

The fourth issue is whether McGowan received ineffective assistance of counsel. Briefly restated, to prevail on an ineffective assistance of counsel claim, McGowan must demonstrate that counsel's representation fell below an objective standard of reasonableness and that the failure was so prejudicial to his case as to deprive him of a fair trial. *See Strickland,* 466 U.S. at 690–692, 104 S.Ct. at 2066–2067.

When confronted by an ineffective assistance of counsel claim, we strongly presume "that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable, professional judgment." *Bellmore v. State,* 602 N.E.2d 111, 123 (Ind. 1992), *reh'g denied.* An unsuccessful defense strategy does not always indicate that the strategy was a poor one, nor does it indicate ineffectiveness of counsel. *Fugate v. State,* 608 N.E.2d 1370, 1373 (Ind.1993). When an appellant predicates an ineffective assistance of counsel claim on counsel's failure to object, the appellant must demonstrate that a proper objection would have been sustained by the trial court. *Grigsby v. State,* 503 N.E.2d 394, 396 (Ind.1987).

### A. *Failure to Object*

■ Prior to trial, McGowan filed a motion in limine which requested that no reference be made to any prior conviction, arrest, alleged misconduct, bad acts, or pending criminal prosecution against him. This motion was granted. During cross-examination, Andry testified in part as follows:

"Q. Alright. Now, if your purpose was to attempt to make additional buys from [McGowan] ... why didn't you call him for such a long period of time?

A. Well, ... I was gathering some other information on Mr. McGowan in the meantime as to other things that were going on in Greene County."

Record, p. 991. Later, the questioning continued:

"Q. You just testified you had other information about Rick McGowan.

A. I do have other information about him.

Q. But have you reduced it to writing in a case report?

A. It's already in other case reports, Sir.

Q. Against Rick McGowan?

A. Yes, sir.

Q. Well, where are they?

A. Well, Sir, he's been charged with the Information in other cases. That's the inf ...

Q. Rick McGowan has been charged with another drug offense?

A. I didn't say drug offense, Sir. It was other information I'd gathered about him."

Record, p. 992. At this point, defense counsel asked to approach the bench. After the bench conference, defense counsel made no objection to Andry's testimony that McGowan had been charged in other cases, did not move for a mistrial, and did not request a limiting instruction. On appeal, McGowan argues that the testimony about the other charges was prejudicial and that if defense counsel had objected, the objection would have been sustained. Further, McGowan argues that if defense counsel had requested a limiting instruction, the trial court would have given one. McGowan concludes that counsel's conduct constituted ineffective assistance. We disagree.

First, defense counsel elicited the response during cross-examination and, as such, could not have objected to its disclosure. Had defense counsel followed Andry's response with an objection, he may well have succeeded only in emphasizing McGowan's prior record to the jury. *See Nuckles v. State,* 560 N.E.2d 660, 663 (Ind.1990). Defense counsel's decision not to object to the response falls within the realm of a defense strategy.

■ Second, even assuming that defense counsel should have objected to the testimony or moved to strike the response, the failure to do so did not substantially prejudice McGowan because when the questioning

continued, defense counsel was able to elicit the following concession from Andry:

> "Q. Officer Andry, it is true, isn't it, that you have no other evidence relating to Rick McGowan's drug dealing activity other than what's contained in your case report?
>
> A. I have other information.
>
> Q. Again, I want you to answer my question. Do you have any other evidence indicating that Rick McGowan is involved in dealing drugs that you have not put in your case report?
>
> A. No, Sir, I do not.
>
> Q. And you have no knowledge that Rick McGowan has ever delivered drugs to any other human being other than to you on March 11th?
>
> A. I have no direct knowledge myself, that's correct.
>
> Q. Have you documented any other instance where Rick McGowan has delivered drugs to any ... other individuals?
>
> A. No, Sir, I haven't."

Record, p. 993.

Based on our review, we cannot say that the manner in which counsel chose to handle Andry's responses constituted deficient performance. *See id.* Ultimately, defense counsel's continued questioning elicited favorable information from Andry to the effect that Andry had no information about any involvement of McGowan in other drug transactions. Further, any suggestion that McGowan was involved in other criminal cases was neutralized by Andry's concession that he had no other information. Therefore, McGowan has not demonstrated that counsel's representation fell below an objective standard of reasonableness and has not demonstrated that even assuming error, counsel's errors was so prejudicial as to deprive him of a fair trial. *See Strickland,* 466 U.S. at 690–692, 104 S.Ct. at 2066–2067.

## B. *Other Instances of Alleged Ineffectiveness*

In addition to the circumstance above, McGowan contends that counsel's conduct was ineffective on several other occasions. McGowan challenges counsel's failure to file a motion to suppress all of the taped conversations between Andry and McGowan on the basis that Andry had the "ability to control and direct which conversations were available for review and which ones were not," and counsel's failure to cross-examine witness William S. Bowles, II, the State's forensic chemist regarding the accuracy of the scales that were used to weigh the cocaine.[4] Appellant's brief, p. 36. McGowan also argues that defense counsel's failures "both individually and when considered collectively" establish that he received ineffective assistance of counsel. Appellant's brief, p. 37.

First, McGowan argues that counsel erred by not filing a motion to suppress the recorded conversations between him and Andry on the basis that Andry controlled which conversations would be taped. McGowan claims Andry intentionally chose not to record the first two or three conversations and that the issue of his predisposition was established in these unrecorded conversations. Again, McGowan failed to provide citation to authority to support his argument that an officer's ability to control which conversations were recorded is a valid evidentiary basis for the suppression of evidence. Therefore, he has waived this issue for review. *See* App. R. 8.3(A)(7).

Furthermore, even assuming McGowan did not waive the issue, the mere fact that Andry controlled which conversations were recorded does not affect the admissibility of the recorded conversations under the evidentiary rules. *See* Ind. Evidence Rule 402 (all relevant evidence is admissible except as provided by state and federal con-

---

**4.** McGowan also alleges that counsel was ineffective for failing to object on hearsay grounds to Andry's testimony regarding the content of his conversations with Nelson and for failing to object to Andry's testimony regarding what McGowan intended by the use of his slang expressions. However, McGowan failed to provide a developed argument and failed to provide citation to authority in support of these claims of error. Rather, McGowan provides only broad allegations that counsel was ineffective. Therefore, we need not address the merits of these challenges. *See* App. R. 8.3(A)(7).

stitutions, statute or evidentiary rules). At most, the fact that Andry determined which conversations to record might affect the weight of the evidence compiled by Andry against McGowan.

In addition, McGowan had the opportunity to cross-examine Andry to determine the reason he did not record the other conversations. The mere fact that Andry determined which conversations to record did not provide a valid exclusionary basis under the evidentiary rules. Therefore, even had defense counsel filed a motion to suppress, it would not have been granted.

█ Second, McGowan argues that counsel was ineffective for failing to question the forensic chemist regarding the accuracy of the scales and the last calibration of the scales. McGowan correctly notes that had the cocaine weighed less than three grams, the offense would have been a class B rather than a class A felony. *See* I.C. § 35-48-4-1. However, counsel's failure to question the chemist about the calibration was within the range of reasonable professional conduct. Because the chemist testified that the cocaine purchased from McGowan weighed 27.054 grams, it is unlikely that a question about calibration would have revealed a discrepancy of more than 24 grams. The question might have only emphasized the large amount of cocaine in McGowan's possession. Therefore, counsel's failure to question the chemist on this point was within the range of reasonable professional conduct. *See Fugate,* 608 N.E.2d at 1373.

Finally, we address McGowan's claim that his conviction should be reversed due to the cumulative nature of counsel's errors. We have already determined that none of the

alleged errors constituted prejudicial error. Where irregularities standing alone do not amount to error, they cannot gain the stature of reversible error when taken together. *Reaves v. State,* 586 N.E.2d 847, 858 (Ind. 1992); *Stonebraker v. State,* 505 N.E.2d 55, 61 (Ind.1987), *reh'g denied.* Therefore, McGowan's claim has no merit.

V.

The final issue raised is whether McGowan's sentence is proportionate to the nature of the crime and whether the sentence is manifestly unreasonable.[5] The two claims utilize separate and independent standards of review. *Young,* 620 N.E.2d at 27.

█ First, a proportionality challenge stems from the United States and Indiana Constitutions, which require that penal sanctions ordered against a person be proportional to the crimes committed by that person.[6] *See* U.S. CONST. amend. VIII; IND. CONST., art. I, § 16; *see also Young,* 620 N.E.2d at 27, n. 9 and accompanying text. Under this analysis, we consider whether the sentence is proportioned to the nature of the offense. *Young,* 620 N.E.2d at 27. The nature and extent of penal sanctions are primarily a function of the legislature and we are not free to set aside legislatively sanctioned penalties because they seem too severe. *Clark v. State,* 561 N.E.2d 759, 765 (Ind.1990). We will not disturb the legislature's determination unless there is a showing of clear constitutional infirmity. *Steelman v. State,* 602 N.E.2d 152, 160 (Ind.Ct.App.1992).

█ McGowan received a total sentence of thirty years for his conviction of a class A felony. Our statute imposes a presumptive

5. The State argues that while McGowan alleges the manifest unreasonableness of his sentence, he fails to provide a cogent argument to support this contention. As a result, the State did not address this claim, but instead limits its response to McGowan's claim that his sentence is disproportionate. While McGowan's argument on the whole is not developed so as to substantially aid our review, his argument does not rise to the level of failing to provide a cogent argument. It is clear that at a minimum, McGowan raised the questions of whether the trial court provided a specific statement of the reasons supporting a deviation from the standard sentence and wheth-

er the sentence is proportionate to his crime. As such, we will consider his arguments.

6. The Supreme Court has held that an extensive proportionality analysis is required under the Eighth Amendment to the United States Constitution only in cases involving life sentences without parole. *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). McGowan's sentence, therefore, does not violate the Eighth Amendment and, we will limit our review to the proportionality analysis under the Indiana Constitution.

sentence of twenty-five years for a class A felony, with no more than twenty years added for aggravating circumstances and no more than ten years subtracted from mitigating circumstances. I.C. § 35–50–2–4. McGowan's enhancement of five years was based primarily on his convictions for two class D felonies and three misdemeanors and his failure to rehabilitate after probation. Given that McGowan was convicted of a class A felony, a serious felony, that he sold an extraordinary amount of cocaine, and that his sentence was enhanced only by five years for two prior felony convictions and several misdemeanors, we cannot find a clear showing of constitutional infirmity. *See Steelman,* 602 N.E.2d at 160. Therefore, we hold that McGowan's enhanced sentence is not disproportionate to his offense.

■ Second, we turn to McGowan's claim that his sentence is manifestly unreasonable. Under this analysis, we consider whether the sentence is such that "no reasonable person could find such sentence appropriate to the particular offense and the offender for which such sentence was imposed." App. R. 17(B). The sentence determination is within the discretion of the trial court. *Duvall v. State,* 540 N.E.2d 34, 36 (Ind.1989). It is also within the court's discretion whether a presumptive sentence will be increased or decreased due to aggravating or mitigating circumstances. *See Ector v. State,* 639 N.E.2d 1014, 1015 (Ind.1994), *reh'g denied.* If the court imposes an enhanced sentence, it must prepare a statement to indicate its rationale for such a sentence. *Robey v. State,* 555 N.E.2d 145, 150 (Ind.1990). The statement must identify all significant aggravating and mitigating circumstances, identify specific facts from which to find the existence of each circumstances, and provide a demonstration that a balancing of all circumstances has been considered. I.C. § 35–38–1–3; *Pearson v. State,* 543 N.E.2d 1141, 1144 (Ind.Ct.App. 1989).

■ At the sentencing hearing, the trial court initially imposed the twenty-five year presumptive term for the conviction of a class A felony. Next, the court found several aggravating circumstances including McGowan's prior criminal history, his need for cor-

rectional or rehabilitative treatment, and the fact that despite being placed on probation, McGowan had graduated from committing misdemeanors and class D felonies to committing a class A felony. The court found one "qualified" mitigating circumstance, that being McGowan's six minor children who would not have "the potential advantage of a father who can support them." Record, p. 1264. The court found that the aggravating circumstances greatly outweighed the mitigating circumstance and, therefore, added five years to the presumptive sentence.

We find that the trial court evaluated all of the aggravating and mitigating circumstances and balanced them accordingly. *See Pearson,* 543 N.E.2d at 1144. In addition, we find that the sentence is not manifestly unreasonable because a reasonable person could find McGowan's sentence appropriate given his conviction for possession of a large amount of cocaine and his prior felony convictions. Therefore, we hold that the trial court did not abuse its discretion by imposing this sentence. *See Duvall,* 540 N.E.2d at 36.

For the foregoing reasons, the conviction and sentence is affirmed in all respects.

AFFIRMED.

BAKER and KIRSCH, JJ., concur.