Aiman SALAMA, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–9709–CR–365.

Court of Appeals of Indiana.

Jan. 27, 1998.

Transfer Denied March 25, 1998.

Patricia Caress McMath Indianapolis, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Janet Brown Mallett, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

HOFFMAN, Judge.

Appellant-defendant Aiman Salama appeals from his conviction for welfare fraud as a Class C felony. The facts most favorable to the judgment are presented below.

On June 5, 1995, undercover Indiana State Police Sergeant Gary Betts entered the Corner Market in Indianapolis, Indiana, and purchased grocery items using federally issued food stamps. The officer had obtained the food stamps from the United States Department of Agriculture as part of the Department's investigation into food stamp fraud. Investigators had previously received a tip concerning the illegal use of food stamps at the location. After Sergeant Betts made the purchase, the store proprietor, later identified as Amin Salama, asked whether Sergeant Betts wanted to sell his remaining food stamps. Amin is the brother of the defendant, Aiman Salama. Sergeant Betts agreed, and then sold Amin $26 in food stamps for one-half their face value. After concluding the transaction, Amin inquired whether Sergeant Betts could obtain more

food stamps to sell for cash. The sergeant responded that he could.

Several days later, on June 9, 1995, Sergeant Betts returned to the store with $300 in food stamps which Amin purchased for $150. As he counted the food stamps, Amin asked the sergeant if he could obtain a larger quantity of food stamps, worth approximately $10,000. Sergeant Betts responded that he could not obtain $10,000 in food stamps but that he could get about $5,000 worth of food stamps from a cousin who would steal the stamps from the Welfare Office. Sergeant Betts returned later that day with $5,000 in food stamps. Amin informed the sergeant that the money for the food stamps would arrive shortly. Approximately one hour later, the defendant Salama arrived with $2,500 in cash. Salama gave the money to Sergeant Betts in exchange for the food stamps. Amin and Aiman Salama were arrested and charged with welfare fraud and attempting to receive stolen property. After a jury trial, Salama was convicted of welfare fraud as a Class C felony. He now appeals.

On appeal Salama raises the following issues for this Court's review:

(1) whether there is sufficient evidence to rebut Salama's claim of entrapment; and

(2) whether Salama's conviction and sentence for welfare fraud as a Class C felony should be reduced for alleged sentence entrapment.

Salama contends that there is insufficient evidence to rebut his claim of entrapment. In Indiana, entrapment is a defense provided by statute. Indiana Code § 35–41–3–9 (1993 Ed.) provides:

(a) It is a defense that:

(1) The prohibited conduct of the person was the product of a law enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and

(2) The person was not predisposed to commit the offense.

(b) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment.

■ To rebut a defense of entrapment, the State must prove either that the accused's conduct was not the product of law enforcement efforts or that the accused was predisposed to engage in the prohibited conduct. *Headlee v. State*, 678 N.E.2d 823, 827 (Ind.Ct.App.1997), *trans. denied*. If the accused had the predisposition to commit the crime and the police merely afford the accused an opportunity to do so, then the defense of entrapment is unavailable. *Id.*

■ This Court reviews a claim of entrapment using the same standard that applies to challenges to the sufficiency of the evidence. *McGowan v. State*, 671 N.E.2d 872, 877 (Ind. Ct.App.1996), *aff'd in part*, 674 N.E.2d 174 (Ind.1997). This Court will neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* Rather, we will examine only the evidence most favorable to the judgment, along with any reasonable inferences to be drawn therefrom, and if there is substantial evidence of probative value to sustain the conviction, it will not be set aside. *Id.*

■ In the present case, Sergeant Betts' testimony and an audiotape of the June 9, 1995 transaction reveals that the defendant, Salama, and his brother, Amin, were active participants in the food stamp transaction. Amin negotiated the exchange rate for the food stamps and urged the sergeant to produce them in larger quantities. On June 9, Amin indicated a desire to purchase as much as $10,000 in food stamps and stated that obtaining cash to complete the purchase would not be a problem. Prior to the $5,000 transaction, Amin exhibited no hesitancy or unwillingness to proceed.

The first contact between Sergeant Betts and the defendant, Salama occurred when Salama approached the sergeant on the day of the sale and attempted to negotiate regarding the price of the food stamps. This evidence demonstrates both Salama's willingness to proceed with the transaction and his knowledge that the $2,500 was for the purchase of the food stamps. Salama's presence and handling of the money is further evidence of his knowledge of the transaction. Salama's self-serving testimony that he did not know the $2,500 was for food stamps and that he acted only at Sergeant Betts' insis-

tence was controverted beyond a reasonable doubt. Salama merely requests that this Court reweigh the evidence which it will not do. The evidence is sufficient to rebut the claim of entrapment.

Salama further contends that his Class C felony conviction and sentence should be reduced. Salama relies upon federal cases authorizing a sentence reduction where the defendant "although predisposed to commit a minor or lesser offense, is entrapped in committing a greater offense subject to greater punishment." *United States v. Staufer*, 38 F.3d 1103, 1106 (9th Cir.1994), (quoting *United States v. Stuart*, 923 F.2d 607, 614 (8th Cir.1991), *cert. denied*, 499 U.S. 967, 111 S.Ct. 1599, 113 L.Ed.2d 662 (1991)), *see also United States v. Sivils*, 960 F.2d 587, 598–599 (6th Cir.1992), *cert. denied*, 506 U.S. 843, 113 S.Ct. 130, 121 L.Ed.2d 84 (1992). Specifically, Salama contends that he was entrapped by Sergeant Betts' alleged insistence of selling $5,000 worth of food stamps at a total purchase price of $2,500.

As the State notes, IND. CODE § 35–43–5–7 (1993 Ed.), defining the offense of welfare fraud, does not provide for the elevation of an offense to a Class C felony based on the price paid to obtain welfare funds. Rather, the offense is elevated to a Class C felony if "the amount of public relief or assistance involved is two thousand five hundred dollars ($2,500) or more . . . ." I.C. § 35–43–5–7(b)(2) (1993 Ed.). Here, the amount of federally issued food stamps involved in the final transaction was $5,000. Hence, the purchase price negotiated by Sergeant Betts is irrelevant in establishing a violation under the statute. Moreover, the rate of exchange for the food stamps had been established prior to the June 5, 1995 transaction.

■ Indiana has yet to recognize the doctrine of sentencing entrapment. However, even if this Court were to recognize such a doctrine, it would not provide relief in the instant case. Although Amin, Salama's brother, made an initial purchase of $26 worth of food stamps, it was Amin who insisted that Sergeant Betts produce the stamps in greater amounts. After the sergeant provided $300 worth of food stamps, Amin requested as much as $10,000.00 more. The parties settled on $5,000 only after the sergeant indicated that he could not obtain $10,000 worth of food stamps. Further, Salama delivered the money necessary to complete the transaction. The evidence is sufficient to rebut Salama's claim of entrapment. Hence, the judgment of the trial court is affirmed.

Affirmed.

GARRARD and RUCKER JJ., concur.